## AGNES McKINNON v. JOHN McEWAN.

*Breach of contract to furnish machinery—Damages not measured by loss of profits.*

Loss of profits cannot be made the measure of damages for breach of contract where the profits are conjectural, speculative, dependent on chances, or have no reference to the nature of the contract and the breach; nor where the damages largely exceed the contract price, unless such a result is contemplated by the parties.

The measure of damages for failure to furnish machinery at the date specified in the contract of purchase, cannot be fixed at the loss of profits which might have been made from the use of the machinery, where the contract does not specify for what it is to be used, and there is no showing that all the other conditions to the realization of the profits existed.

Error to Bay. Submitted Jan. 18. Decided April 12.

ASSUMPSIT. Defendant brings error. Affirmed.

*Hatch & Cooley,* for appellant, cited *Griffin v. Colver* 16 N. Y. 489; *Rogers v. Bemus* 69 Penn. St. 432; *Western Gravel Road Co. v. Cox* 39 Ind. 260; *Hinckley v. Beckwith* 13 Wis. 31; *Shepard v. Gaslight Co.* 15 Wis. 318; *Richardson v. Chynoweth* 26 Wis. 656; *Waters v. Towers* 20 Eng. L. & Eq. 410.

*A. McDonell* for appellee. Loss of profits can not measure damages for breach of contract where they would not be a direct result of the breach (*Railroad Co. v. Howard*

13 How. 344; *Fox v. Harding* 7 Cush. 522; *Thompson v Jackson* 14 B. Mon. 114) where such a measure was not assented to: *Snell v. Cottingham* 72 Ill. 161; *Brown v. Foster* 51 Penn. St. 165; Wood's Mayne on Damages 41; merely probable net profits are not proximate but contingent: *Hopkins v. Sanford* 41 Mich. 243; *Singer v. Farnsworth* 2 Ind. 597; *Booth v. Spuyten Duyvil Co.* 60 N. Y. 487.

MARSTON, J. The plaintiff below, McKinnon, commenced an action of *assumpsit*, declaring upon the common counts. The defendant pleaded the general issue and gave notice of recoupment. The plaintiff's claim was for a balance due under a written contract to furnish the materials and make for defendant two boilers, have the same " completed and all connected in the mill of the said first party on or before the fifteenth day of March, 1880." The defendant, in his notice of recoupment, set forth that the boilers were to be used in his steam-mill and salt block for the purpose of running and operating the same; that these were the only boilers he would have to furnish steam; that the capacity of his salt block was two hundred barrels per day; that without the boilers he could not manufacture any salt, all of which facts were known to the plaintiff; that the boilers were not made and connected until the 28th day of April, and that in consequence of the breach by plaintiff the use and profits of his salt block were wholly lost, and the profits he would have made from the fifteenth of March to the twenty-eighth of April he claimed the right to recoup. This claim was not allowed in the court below, and this raises the principal question in the case, viz., the proper measure of damages.

The position taken by counsel for plaintiff in error as set forth in their brief is, that the defendant below could under the facts recover the value of the use of the machinery which lay idle in consequence of the delay, and that beyond this "what he might have made *from* the use of the machinery, etc.,—the profits which he would have realized from the business carried on with it."

There are undoubtedly many cases where upon the breach of a contract the injured party is entitled to recover as damages the profits he would have made had the contract not been broken. Where a party is to perform labor from which a profit would arise as the direct result of the work done at the contract price, such profits may be recovered. *Burrell v. New York etc. Salt Co.* 14 Mich. 39. Or where a party is to furnish and deliver material under a contract and is prevented, as in *Masterton v. Mayor of Brooklyn* 7 Hill 62. The principles recognized in this class of cases are well established and have been applied in a great variety of cases. So in cases of tort the loss of profits may be allowed. *Allison v. Chandler* 11 Mich. 558; *White v. Moseley* 8 Pick. 356.

There is, however, another class of cases, within which this comes, where the authorities differ as to the right of the injured party to recover such profits as are claimed in this case.

Perhaps the case most relied on, and upon which the others allowing such a recovery mainly rest, is *Hadley v. Baxendale* 9 Exch. 341. In that case the court held the loss of profits while the mill was kept idle could not be recovered, because it did not appear the carrier knew that the want of the shaft was the only thing which was keeping the mill idle. The court also intimated that a different rule might have prevailed had the facts been fully known to the carrier. Of course no such question was before the court in that case, and intimations given upon facts that may perhaps appear in some future case are not usually relied upon. No effort will be made in this opinion to classify or reconcile the cases bearing upon and discussing this question.

The profits to be recovered must not be conjectural or speculative in their nature, or dependent upon the chances of business or other contingencies, and must have some reference to the nature of the contract and breach complained of.

In the present case the contract is silent as to the particular business which was to be carried on in the use of these

boilers. That, it is said, was well known to both the contracting parties. But admitting all this, would not the profits to be made in the manufacture of salt be dependent upon many other things besides the performance of this contract,—a necessary supply of fuel, which the defendant claims to have had, of brine, of machinery for pumping the same, of proper vats, grainers, pipes and other things necessary to carry on successfully and profitably the manufacture of that commodity, the certainty or probability even, even if all these things did exist and were in proper order, of their remaining in like condition?

But supposing the party had completed the boilers and put them in place, but had failed to make all the necessary connections;—no use could be made of the boilers in such a condition; would the damages be the same? In other words, "where the chattel was itself only part of something else, which was rendered useless for want of it, should the profit of the entire chattel be recovered? If a vessel were delayed in port for want of a bowsprit, should a loss of freight, to the amount perhaps of thousands of pounds, be obtained in damages?" Very many questions similar to this might be put, and if the rule contended for by plaintiff in error were to prevail, in many cases the breach of a very simple contract, or failure in some part, might bring ruin upon the parties failing, where no such loss was contemplated. The adoption of such a rule would be extremely dangerous. If such consequences are to follow, it is much better that the parties, when contracting, expressly provide for such enlarged responsibility. This they may do, and the damages then may fairly and safely be said to have been contemplated by them at the time of entering into the agreement.

Where the damages claimed, as in this case, largely exceed the contract price of the materials and labor to be furnished and performed by the party in default, we may well question the justice of such a conclusion in the absence of a clear showing that such a result was anticipated by the parties.

It was also claimed that in the absence of anything to the

contrary, the value of the use of defendant's salt block would be the net profits to be made from operating it, and this should be taken and allowed as damages.

It does not follow that the fair rental value of premises can be ascertained by showing the profits. How the profits were arrived at in this case does not appear. If no account was taken of the money invested, the profits would be apparently much greater, and would be an unsafe criterion to fix rental values by. We need not however spend much time upon this question in view of the way it comes up.

As no error is discovered the judgment will be affirmed with costs.

The other Justices concurred.